**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Damiano,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. CV-12-0759-TUC-DTF<br><br>**ORDER** |

Plaintiff Manuel Damiano brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Before the Court are Plaintiff's opening brief and Defendant's Response. (Docs. 14, 14-1, 17.)[1] The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 8, 10.) The Court finds that Plaintiff is not entitled to relief.

## PROCEDURAL HISTORY

Damiano filed an application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) on October 8, 2009. (Administrative Record (AR) 157, 161.) Damiano alleged disability from March 15, 2004. (AR 157, 161.) His application was denied upon initial review (AR 77-78) and on reconsideration (AR 109-14). A hearing was held on April 26, 2011 (AR 49-78), after which ALJ Larry E. Johnson found, at Step

---

[1] The Court notes that Plaintiff's Opening Brief is 30 pages in length and he submitted a separate 20-page statement of facts. This violates Local Rule Civil 16.1(d), which allows 25 pages for the opening brief inclusive of the facts. Because Defendant has not objected and the matter is fully briefed, the Court will allow the additional pages.

1 Five, that Damiano was not disabled (AR 20-28). The Appeals Council denied Damiano's
2 request to review the ALJ's decision. (AR 1.)

## **FACTUAL HISTORY**

Damiano was born on November 6, 1968, making him 35 at the alleged onset date of her disability. (AR 157.) He left school around fifth grade and is illiterate. (AR 56, 206.) His work experience is as a laborer and metal framer. (AR 208, 219.) At the age of 19 or 20, he was shot in the hip. (AR 53, 62.) He broke his right ankle in approximately 2001, and he testified it causes him a lot of pain and to fall regularly. (AR 53-54, 55.) He was laid off from his last job because he could not carry a necessary amount, he could not move fast enough and he would fall. (AR 55, 56.) He was hired for some lighter work for short periods but also was laid off from those jobs. (AR 56, 59.)

The ALJ determined Damiano had two severe impairments: borderline intellectual functioning and history of back pain. (AR 22.) The ALJ found that Damiano could perform light work but was limited to unskilled work (AR 27) due to the following nonexertional limitations: markedly limited in ability to make judgments on complex work-related decisions; moderately limited in ability to understand, remember and carry out complex instructions, and respond appropriately to usual work situations and changes in routine work setting; and mildly limited in ability to make judgments on simple work-related decisions, understand and remember simple instructions, and interact appropriately with the public, supervisors and co-workers. (AR 24.) The ALJ concluded Damiano could not perform his past relevant work, which required a higher exertional level, but based on the Medical-Vocational Guidelines, he could perform other work available in the national economy. (AR 27.)

## **STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not

1 working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals
2 the requirements of a listed impairment; and (4) claimant's residual functional capacity
3 (RFC) precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4),
4 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the
5 claimant has the RFC to perform other work that exists in substantial numbers in the national
6 economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner
7 conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step
8 process, he does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

9 "The ALJ is responsible for determining credibility, resolving conflicts in medical
10 testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
11 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the
12 Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C.
13 § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance."
14 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d
15 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only
16 "when the ALJ's findings are based on legal error or are not supported by substantial
17 evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.
18 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the
19 evidence, and if the evidence can support either outcome, the court may not substitute its
20 judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402
21 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir.
22 2004).

23 **DISCUSSION**

24 Damiano alleges the ALJ committed three errors, that he failed to give proper weight
25 to his treating physician; erred in giving great weight to an examining physician; and
26 improperly relied upon the guidelines at Step Five.

27
28

- 3 -

**Treating Physician, Dr. Churchill**

Plaintiff argues the ALJ failed to weigh properly the opinion of his primary care doctor Patrice Churchill.[2] On August 20, 2010, Dr. Churchill completed a Physical Residual Functional Capacity Assessment. (AR 318.) She concluded Damiano could stand for 2 hours of an 8-hour day, sit for 15-30 minutes without changing positions and walk one block without stopping; could occasionally lift 10 pounds but never lift 20 pounds; frequently reach and constantly finger and grasp; must lie down during the day and alternate sitting and standing; and, more than 5 days per month, would be unable to work due to physical problems. (*Id.*)

After providing his summary of the record evidence, the ALJ accorded no weight to the opinion of Dr. Churchill because he found it was "simply not supported by the balance of the medical evidence of record, which indicates minor, if any, findings." (AR 26.) To evaluate the ALJ's finding regarding Dr. Churchill's opinion, the Court reviewed the totality of the record and summarizes below the medical evidence central to this issue.

In October 2009, Damiano presented at the ER with 4 days of abdominal pain. (AR 308.) He was diagnosed with a right inguinal hernia and cholelithiasis (gallstone disease). (*Id.*) Subsequently, he had two surgeries, one to remove his gallbladder (November 2009) and one to repair the hernia (February 2010). (AR 267, 298.) After the hernia surgery Damiano was admitted to the hospital overnight due to pain but requested discharge the following day feeling well. (AR 296.) There is no record evidence that these surgeries imposed extended physical restrictions.

Damiano first saw Dr. Churchill on March 23, 2010, and her records continue until the hearing before the ALJ. At the first appointment, Dr. Churchill gave Damiano a 30-day prescription for Omeprazole for reflux. (AR 334.) Her records do not reflect any further

---

[2] Plaintiff mentions other arguments in the introduction to this claim but, because he did not develop them in his brief, the Court does not address them. *See Carmickle v. Comm, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an issue not argued with any specificity).

- 4 -

complaints of abdominal pain or treatment for any gastrointestinal issues. Dr. Churchill's records document Damiano's complaints about back and ankle problems, however, they provide limited medical findings to verify these reported symptoms. The abnormal findings by Dr. Churchill were limited and non-acute: on July 29, 2010, Damiano had a mild stiff gait and mild stiffness of his hip flexors (AR 341); on August 24, 2010, his gait and stance were abnormal but there were no acute findings (AR 345); on September 21, 2010, he had a decreased range of motion, particularly in flexion and extension, and the "usual" chronic lumbar spasm, but there were no acute palpatory findings (AR 350); and on November 4, 2010, he presented with mild chronic spasm of upper and lower back muscles but no acute findings (AR 353). Dr. Churchill prescribed a variety of medications in various combinations for Damiano's muscle pain, including Cyclobenzaprine, Diclofenac Sodium, Piroxicam, Naproxen and Cymbalta. (AR 337, 342, 345, 350, 352, 354, 356, 357.) In November, 2010, she gave him an injection of Ketorolac in the left upper outer quadrant (AR 358), and subsequently referred him for steroid injections (AR 359).

Many of Dr. Churchill's findings were normal: on April 13, 2010, full range of motion and no tenderness in musculoskeletal system (AR 337); on August 24, 2010, back normal on exam with no costo vertebral angle tenderness (AR 344); and on November 4, 2010, full range of motion, no limping and absence of pain (AR 353). Further, x-rays taken of Damiano's hips, lumbar spine and feet were negative (AR 335, 374) and preliminary labs covering arthritis were negative and normal (AR 335). An MRI of the lumbar spine revealed bulging discs at L4-L5 and L5-S1 with mild spondylosis. (AR 376.) However, the neurosurgeon to whom Damiano was referred, Dr. Brian Callahan, found only mild disc disease that did not require surgery and did not explain Damiano's stated pain. (AR 323.) Subsequent nerve conduction studies, as recommended by Dr. Callahan, were normal. (AR 323, 324.) Dr. Callahan's physical exam revealed normal muscle strength and reflexes, no Babinski sign, normal gait and coordination, and intact sensation. (AR 322-23.)

Damiano was sent for two consultative physical examinations. He was examined by Dr. Enrique Suarez on December 29, 2009, who found that Damiano had normal range of

motion, reflexes, ambulation and x-rays. (AR 286.) After summarizing the exam as normal, Dr. Suarez concluded that Damiano had no limitations on his activities. (AR 282, 286.)

He was examined again on June 27, 2011, by Dr. Amna Yaqoob. Dr. Yaqoob performed a straight leg raise test bilaterally and a Romberg test, both of which were negative. (AR 389.) Damiano's strength was normal with good muscle tone, and his gait, sensory examination, deep tendon reflexes and cranial nerves were unremarkable. (*Id.*) There was no paravertebral muscle spasm or tenderness and all tested range of motion was normal, but Damiano resisted examination of his lumbar range of motion. (*Id.*) Dr. Yaqoob noted that he squatted, bent forward and extended his back and moved laterally without restriction, took his shoes off and put them back on, and he got on and off the examination table and sat comfortably. (AR 388-89.) His general physical movement was unremarkable, which the doctor found inconsistent with Damiano's reported experiences. (AR 388.) Dr. Yaqoob diagnosed back pain with normal cervical examination; right ankle pain secondary to mild osteoarthritis post-traumatic with normal range of motion and no limitations; and abdominal pain secondary to gastroesophageal reflux disease with no limitations to physical activity. (AR 389.) She found no 12-month limitations on Damiano's activity. (AR 390, 396-401.)

Damiano argues, first, that Dr. Churchill's opinion should have been accorded controlling weight as his treating physician. The governing regulations provide:

> When a treating physician's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Dr. Churchill's opinion that Damiano was significantly restricted in his ability to work was not well-supported by clinical and laboratory techniques. Over the course of treating Damiano for a year, she periodically documented mild non-acute abnormalities such as stiff gait, decreased range of motion or muscular spasms in the back. (AR 341, 345, 350, 353.) During other exams he exhibited full range of motion, absence of tenderness and no pain. (AR 337, 344, 353.) All laboratory findings, including x-rays, blood testing and nerve conduction studies, were negative with

the exception of a lumbar MRI (AR 323, 324, 335, 374, 376), which revealed such minor impairment that Dr. Churchill acknowledged there was "no real disc disease" (AR 356).

Further, Dr. Churchill's opinion is inconsistent with the other medical record evidence. Dr. Callahan, a neurosurgical specialist, found no abnormalities during his exam of Damiano and concluded the disc disease did not explain Damiano's pain. (AR 322-24.) Similarly, Drs. Suarez and Yaqoob, practitioners in internal medicine, examined and tested Damiano a year-and-a-half apart and all of the results were normal. (AR 286, 389.) These doctors concluded that Damiano was not physically restricted in his ability to work. (AR 282, 396-401.) In light of the record in entirety, Dr. Churchill's opinion was not entitled to controlling weight.

Second, Damiano argues the ALJ failed to provide specific reasons for rejecting Dr. Churchill's opinion and to apply the factors set forth in the regulations for weighing medical opinions: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ discussed some of these factors, acknowledging Dr. Churchill's treating relationship with Damiano and finding her opinion inconsistent with the record as a whole. However, there are no Ninth Circuit cases finding reversible legal error solely because an ALJ does not discuss each factor listed in §§ 404.1527(c), 416.927(c). The regulations provide that the ALJ is to apply the factors and provide "good reasons" for the weight given to the treating source. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, it is legal error if the ALJ fails to provide "specific and legitimate reasons," supported by substantial evidence, to reject even a contradicted opinion of a treating physician. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (upholding ALJ's rejection of treating physician's opinion in favor of contradictory examining physician based on inconsistency with doctor's notes and other sources).

While the claimant might have liked the ALJ to engage in a lengthier discussion regarding his rejection of Dr. Churchill's opinion, before the ALJ discounted the opinion he provided a synopsis of the record and made findings regarding the other medical opinions

1  of record. (AR 25-26.) Ultimately, the ALJ provided a specific, legitimate reason for his
2  conclusion regarding Dr. Churchill's opinion. As detailed above, after review of the record
3  as a whole, the Court finds substantial evidence to support the ALJ's finding. The other
4  medical opinions all concluded that Damiano had no significant physical restrictions. (AR
5  90, 286, 292, 390, 396-401.) Further, the physical examinations and laboratory tests yielded
6  no acute abnormal results.

7  In light of the above summary of the medical record, there is substantial evidence to
8  support the ALJ's finding that Dr. Churchill's opinion about Damiano's limitations was not
9  supported by the medical evidence. The ALJ did not err in giving her opinion no weight.

10  **Examining Physician, Dr. Yaqoob**

11  Damiano argues the ALJ erred in giving great weight to the opinion of Dr. Yaqoob
12  because her opinion was based on incomplete information, in that she lacked any medical
13  records or diagnostic findings. He contends the medical records are inconsistent with her
14  findings and that her opinion could not constitute substantial evidence to reject the opinion
15  of Dr. Churchill.

16  Dr. Yaqoob examined Damiano on June 27, 2011. (AR 387-89.) She gathered a
17  history from him, conducted a physical examination, provided diagnoses and opined on his
18  ability to do work-related activities. (AR 387-90.) She concluded his only limitation was that
19  he could not continually operate foot controls with his right foot. (AR 396-401.)

20  An ALJ may "reject the opinion of a treating physician in favor of a conflicting
21  opinion of an examining physician if the ALJ makes 'findings setting forth specific,
22  legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas*
23  *v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (*Magallanes v. Bowen*, 881 F.2d 747, 751
24  (9th Cir. 1989)). If the examining physician relies upon her own clinical findings, diagnoses
25  or objective medical tests that differ from the treating physician, those findings constitute
26  substantial evidence. *Orn v. Astrue*, 497 F.3d 625, 632 (9th Cir. 2007).

27  As found above, the ALJ made a specific finding for rejecting the opinion of Dr.
28  Churchill, which the Court finds was based on substantial evidence. In turn, the ALJ

provided specific reasons to give weight to the opinion of Dr. Yaqoob. After noting that she examined him, evaluated his work history and performed tests to evaluate his level of functioning, the ALJ found her opinion "consistent with the majority of the medical evidence of record insofar as they show that the claimant is not precluded from performing work-related activities." (AR 26.) As set forth above, Dr. Yaqoob offered her own diagnoses, distinct from those of Dr. Churchill, and conducted her own objective medical testing. Therefore, her findings can constitute substantial evidence to reject a treating physician's opinion. More importantly, as discussed above, exclusive of Dr. Churchill's opinion, the opinion of Dr. Yaqoob is consistent with the remainder of the medical record. The ALJ's adoption of it is, therefore, supported by substantial record evidence.

Damiano's specific arguments do not undermine this finding. First, Plaintiff contends the medical records indicate a significant history of abdominal pain and treatment that were not considered by Dr. Yaqoob. Specifically, Damiano had an abdominal gunshot wound, two hernia surgeries, and removal of his gallbladder. Dr. Yaqoob recorded Damiano's statements that he had abdominal pain, with intermittent reflux-type symptoms that are worst when lying down. (AR 388.) He informed her of his gunshot wound and ventral hernia, which she confirmed upon physical examination. (AR 388, 389.) Contrary to his argument, Dr. Yaqoob did more than "visualize the scars," she also performed an exam and found that his abdomen was "soft, nontender, not distended." (AR 389.) Additionally, her observations revealed no limitations in his movement. (AR 388-89.) She diagnosed him with abdominal pain secondary to gastroesophageal reflux disease. (*Id.*) She further noted that he does not take any medication and needs treatment, but found this did not limit his physical activity. (*Id.*)

The remainder of the record is not to the contrary. The gunshot wound occurred when Damiano was approximately 20, which required repair of an abdominal wall hernia, and he continued to work after that. (AR 62, 277.) As summarized in the section above, there is no medical record evidence suggesting that Damiano suffered from long-term impairments resulting from his gallbladder and hernia surgery. Further, Damiano sought and received treatment only once from Dr. Churchill for issues related to his gastrointestinal system. (AR

334.) Thus, Dr. Yaqoob's conclusions regarding Damiano's abdominal complaints are consistent with the remainder of the record and the ALJ's adoption of her opinion is supported by substantial evidence.

Second, Damiano contends that Dr. Yaqoob did not take into account his significant musculoskeletal problems. As discussed extensively in the section above addressing the opinion of Dr. Churchill, all laboratory findings relative to Damiano's musculoskeletal system were negative with the exception of mild lumbar disc degeneration, which the specialist concluded was not the source of pain. (AR 323, 324, 335, 356, 374, 376.) Further, over the course of eighteen months, numerous physical examinations by four different doctors revealed only intermittent, limited, non-acute abnormalities. Again, Dr. Yaqoob's findings are consistent with the record. The ALJ's decision to give her opinion great weight was not error and is supported by substantial evidence.

**Medical-Vocational Guidelines**

Damiano argues, initially, that it was error for the ALJ to rely on the Medical-Vocational Guidelines and not obtain the testimony of a vocational expert because Plaintiff has nonexertional impairments that prevent him from performing the full range of light or sedentary work. The ALJ found that Damiano's non-exertional limitations (as set forth in the ALJ's RFC) had little or no effect on the occupational base of unskilled light work; therefore, he found application of the Guidelines appropriate. (AR 27.) Plaintiff does not contend that finding was in error. Rather, he contends that the ALJ's RFC finding is erroneous because it did not encompass the limitations found by Dr. Churchill or his ankle weakness and back and foot pain. He argues that if the ALJ had adopted these additional limitations then application of the Guidelines would have been improper.

First, as discussed above, the Court found no error with respect to the ALJ's treatment of Dr. Churchill's opinion or the other medical opinions. Second, Plaintiff's reported ankle, back and foot problems were not substantiated by objective medical evidence and Plaintiff has not challenged successfully any of the findings on that point. Further, the ALJ found Damiano not entirely credible regarding his subjective complaints (AR 25), and Plaintiff did

not dispute that finding. Therefore, the underlying premise of this claim – Plaintiff's challenge to the RFC – fails and so does the claim.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Plaintiff has not established that the ALJ's decision was based on legal error or was not supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

Accordingly,

**IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

DATED this 22nd day of October, 2013.

D. Thomas Ferraro
United States Magistrate Judge